Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jason Hacker

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON HACKER, *on behalf of all those similarly situated*, | ) ) ) |
| Plaintiff, | ) No. **'22CV1119 L    BLM** ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| GLANBIA PERFORMANCE NUTRITION dba OPTIMUM NUTRITION, INC.*, a Delaware corporation*, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendant. | ) ) |

_____

Jason Hacker ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, hereby brings this action against Glanbia Performance Nutrition dba Optimum Nutrition, Inc. ("Optimum Nutrition" or "Defendant"), alleging that certain products manufactured, packaged, labeled, advertised, distributed, and sold by Defendant are misbranded and falsely advertised in California and otherwise violate California law, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1.     Plaintiff Jason Hacker is and at all times relevant was a citizen of the state of California, domiciled in San Diego, California.

2.      Defendant Glanbia Performance Nutrition dba Optimum Nutrition, Inc. is a Delaware corporation with its principal place of business in Aurora, Illinois.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.      Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

5.      The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.      In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.      In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8.      This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9.      Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through

wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10.    Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11.    Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12.    Plaintiff's losses and those of other Class members were sustained in this district.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14.    Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.    Consumers Pay A Premium for "Clean Labels."**

15.    Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

16.    For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey.

Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

17.     This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

**B.     Defendant's Use of Synthetic Flavorings and Deceptive Labels.**

18.     Defendant Optimum Nutrition was founded in 1987 and later became a component of the Glanbia Nutrition portfolio. Glanbia is an Irish global conglomerate that manufactures and distributes foods and dietary supplements globally.

19.     Optimum Nutrition formulates, manufactures, and sells a line of sugar-free, caffeinated "pre-workout" powders called "AMIN.O ENERGY" ("the Products"). These powders are sold in 15 flavors, including Blue Raspberry, Cotton Candy, Lemon Lime, and Strawberry Lime. They are marketed to provide muscle recovery for workouts.

20.     These products are distributed through the company's e-commerce website, through retailing websites such as Amazon.co, and BodyBuilding.com, and through national retailers such as Wal-Mart, GNC, and Target.

21.     On or about October 29, 2021, Mr. Hacker purchased a 30-serving tub of Optimum Nutrition's "Essential AMIN.O ENERGY" powder, Blue Raspberry flavor, for $33.99, from a Sprouts market in San Diego, California. The batch number of the Product that Mr. Hacker purchased was 0001051559, with an expiration date of April 2023.

22.     To appeal to consumers such as Mr. Hacker who seek out natural food products, are concerned about weight loss and health, and are willing to pay more for "clean" products,

the Products' labels stated that they contained "No Artificial Sweeteners or Colors" and are "Naturally Flavored":



23.    The ingredients list for the Products also stated that they contained only "Natural Flavor":

OTHER INGREDIENTS: Natural Flavor, Citric Acid, Malic Acid, Silicon Dioxide, Calcium Silicate, Tartaric Acid, Stevia Leaf Extract, Xanthan Gum, Caffeine (from Tea Leaf and/or Coffee Bean), Fruit and Vegetable Juice (Color), Soy Lecithin. CONTAINS: SOY

24.     Sometime between November 19, 2021 and January 14, 2022, after counsel for Mr. Hacker brought these labelling and marketing claims to Defendant's attention, the company changed the Products' labels to remove the "no artificial sweeteners or colors" and "naturally flavored" claims.

25.     These claims were false. The Products are artificially flavored.

26.     Testing by an independent third-party laboratory, commissioned by the undersigned, establishes that the Products contains an ingredient identified as "malic acid." While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in the large quantities and is almost never used in mass-produced food products. Instead, testing performed by an independent third-party laboratory, undertaken at the undersigned's direction, has confirmed that the malic acid that Defendant uses in these Products is DL malic acid, a synthetic substance derived from petrochemicals.[1]

27.     This type of malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

28.     Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The sweetness or tartness of a fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid.

29.     The quality and consumer acceptability of fruit flavors is based on their perceived sweetness and tartness, which in turn is driven by the ratio between sugars and acids. Fruits such as raspberries, lemons, limes, and strawberries have their own natural ratio of sugars and acids.

---

[1] DL malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

30.     The malic acid used in the Products is used to create, enhance, simulate, and/or reinforce the sweet and tart taste that consumers associate with the fruits that are depicted on the Products' labels, such as raspberries, lemons, limes, and strawberries.

31.     Defendant uses the petrochemical-derived DL malic acid in its Products to create this sweet and tart flavor but pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers.

32.     The ingredients on the Products' label are declared in a way that is misleading and contrary to law, because Defendant designates the ingredient by its generic name, "malic acid," instead of by its specific name, "DL malic acid."

## C.     Requirements for Labelling

33.     California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, et seq., incorporates all food flavoring and additive regulations of the Federal Food, Drug, and Cosmetic Act ("FDCA"). The regulations require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

34.     Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

35.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

36.     Any recognizable primary flavor identified directly or indirectly on the front label of a food Product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

37.     Here, the Products' labels both state the characterizing flavors (raspberries, lemons, limes, and strawberries, and others) and reinforce the statement of the characterizing flavor by depictions of fruits.

38.     If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

39.     A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

40.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

41.     By changing the ratio between sugars and acids that is naturally found in fruits such as raspberries, lemons, limes, and strawberries, the DL malic acid used in the Product reinforces, stimulates, or enhances the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

42.     DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source. The Products therefore contain artificial flavorings.

43.     Because the Products contain artificial flavoring, California law requires the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

44.     The Products have none of the required disclosures regarding the use of artificial flavors.

45.     Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

**Optimum's Calorie Claims and the FDA's Five Methods**

46.     The Products' labels also claim that the Products contain only 5 calories per serving:



47.     Regulations of the U.S. Food and Drug Agency ("FDA") permit the use of any of "Five Methods" of determining the caloric content of foods. *See* 21 C.F.R. § 101.9(c)(i)(1). As

a "Third Group" nutrient, or one associated with health concerns, the actual calories per serving of the Product cannot 20 percent of the label claim. *Id*. § 101.9(g)(5).

48.     The FDA provides a clear example of labeling calories for an amino acid-based supplement at https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 calories and is listed as 15 based on pertinent rounding rules:



| Supplement Facts | |
|---|---|
| Serving Size 1 Tablet | |
| Servings Per Container 50 | |
| **Amount Per Tablet** | |
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |
| * Daily Value not established. | |

Other ingredients: Cellulose, lactose, and magnesium stearate.

49.     Optimum lists the "Amino Acid Blend" in the Product as approximately 5 grams per serving, and represents that the Products contain 5 calories per serving.

50.     Based on the FDA guidance and consistent with the example provided, the amino acid blend in the Products alone constitutes approximately 20-25 calories per serving. This 20-25 calorie per serving estimate does not include the calories provided by other ingredients (approximately 4 grams).

51.     This analysis is consistent with bomb calorimetry analysis that was conducted by an independent third-party laboratory at the direction of the undersigned. Bomb calorimetry is one of the FDA-approved "Five Methods."

52. That analysis revealed that the Products contain 1,740 kcal per pound, or about 863 calories in the entire 25-serving container. These results establish that the Product contains about 35 calories per serving.

53. Optimum's calorie representations are thus in direct violation of FDA guidance for labeling calories. *See* 21 C.F.R. § 101.9(c). Optimum's five-calories per serving representations are thus in direct violation of FDA guidance for labeling calories when present at levels at or above 5 Calories/serving at 5 Calorie intervals up to 50 Calories. *See* 21 C.F.R. § 101.9(c). The FDA requires manufacturers to declare "total calories" in the Supplement Facts panel "when they are present in measurable amounts," defined as "an amount that exceeds the amount that can be declared as 'zero'" pursuant 21 C.F.R. § 101.9(c). *See* https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-6.

54. Here, calories are present in measurable amounts.

55. Under any of the FDA's relevant Five Methods, the Products are mislabelled because the actual caloric content per serving is at least 5 times the stated value, even after subtracting grams of protein to account for indigestibility.

56. Defendant's advertising deceives consumers, such as Plaintiff, by making the same deceptive representations regarding calorie content.

**C.   All Flavors of the Deceptively Labeled Products are Substantially Similar.**

57. These Products are formulated in 15 different flavors. All of the Products are made with a base formulation that includes Silicon Dioxide, Calcium Silicate, caffeine, green tea and green coffee bean extracts, and sunflower lecithin, and an identical amino blend.

58. These Products are also offered for sale on the Defendant's website for similar pricing: $11.99 for stick "six-packs," $27.99 for 30 servings, or $49.99 for 65 servings.

59.     The Products also use similar labels, and the labels present the "Naturally Flavored" and 5-calories claims in a similar manner.

60.     Because of these similarities, the resolution of the asserted claims will be identical as between the purchased and unpurchased Products.

61.     Because both the Products and alleged misrepresentations are substantially similar, Plaintiff's claims related to the Products that he purchased are typical of the claims available to all purchasers of Defendant's AMIN.O ENERGY Products. As such, Plaintiff is an adequate class representative for a putative class of purchasers of all of Defendant's AMIN.O ENERGY Products, regardless of whether Plaintiff purchased every flavor of the Products.

62.     Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

63.     Given the Defendant's advertising material and other assurances, consumers including Plaintiff would reasonably understand Defendant's statements to mean that each Products were "naturally flavored," free of artificial flavorings, and contain no more than 5 calories per serving, as advertised and represented. These statements were false.

64.     Consumers including Plaintiff would reasonably rely on Defendant's statements such that they would not have purchased the Products from Defendant if the truth about the products' flavoring and caloric content were known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations about the flavoring and caloric content of the Products were false and misleading.

65.     Consumers including Plaintiff especially rely on the claims made by food product manufacturers such as Defendant, as they have no way of judging the accuracy of labelling claims by viewing or even consuming the Products.

66.     Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

67.     All prerequisites to suit have been satisfied.[2]

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

69.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

70.     Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

71.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

---

[2] Plaintiff intends to amend this Complaint 30 days after service of process to add claims under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. *See id*. at § 1782(d).

72.     **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state.

73.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

    a.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

    b.  Whether a reasonable consumer would understand Defendant's "naturally flavored" and 5-calories claims to indicate that the Products contained only natural flavorings and 5 calories per serving, and reasonably relied upon those representations;

    c.  Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

    d.  the proper amount of damages and disgorgement or restitution;

    e.  the proper scope of injunctive relief; and

    f.  the proper amount of attorneys' fees.

74.     Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

75.     In short, these common questions of fact and law predominate over questions that affect only individual Class members.

76.     **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

77.     Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

78.     There are no defenses available to Defendant that are unique to the named Plaintiff.

79.     **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

80.     Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

81.     **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons

      a.   the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be

virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b.  the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

82.  Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

83.  Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

84.  **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

85.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### SECTION 17200 *et seq.* — "UNFAIR" CONDUCT

86.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

88.     Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

89.     Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose accurately the synthetic flavoring used in the Products and accurately state the caloric content of the Products.

90.     As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

91.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

92.     Defendant publicly disseminated untrue or misleading representations regarding the flavoring and caloric label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

93.     Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and

any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq.*

### COUNT 2
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### SECTION 17200 *et seq.* — "FRAUDULENT" CONDUCT

94.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

95.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

96.     Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq.*

97.     Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose accurately the synthetic flavoring used in the Products and accurately state the caloric content of the Products.

98.     As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

99.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

100.    Defendant publicly disseminated untrue or misleading representations regarding the flavoring and calories label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

101.    Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business

practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 3**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq.* — "UNLAWFUL" CONDUCT**

102.   Plaintiff reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

103.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

104.   Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

105.   Defendant's business practices, as alleged herein, are "unlawful" because it fails disclose accurately the synthetic flavoring used in the Products and accurately state the caloric content of the Products.

106.   As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

107.   Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

108.   Defendant publicly disseminated untrue or misleading representations regarding the flavoring and calories label claims of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

109.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *et seq*.**

110.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

112.   Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

113.    Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

114.   Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

115.   At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

116.   Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**PRAYER FOR RELIEF**

117.   WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a. Certifying the California Class;

b. Declaring that Defendant violated the UCL and FAL;

c. Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff pursuant to California Code of Civil Procedure Section 1021.5 and the common-law private-attorney-general doctrine; and

e. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

August 1, 2022

CLASS ACTION COMPLAINT